UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Vanelia Cross, on behalf of herself, the proposed Rule 23 class, and others similarly situated,<br><br>     Plaintiff,<br><br>v.<br><br>Rochester Home Care LLC and Munya Bana,<br><br>     Defendants. | Court File No.<br><br>**COMPLAINT**<br>**(JURY TRIAL DEMANDED)** |

**PRELIMINARY STATEMENT**

1. This case presents an uncommonly straightforward example of an employer misclassifying its employees as exempt from the overtime provisions of state and federal law. Plaintiff Vanelia Cross, like her coworkers, works as a personal care assistant for Defendant Rochester Home Care LLC and its owner and principal, Defendant Munya Bana. As a personal care assistant, Cross takes care of sick and elderly clients in their homes, providing critical care, comfort, fellowship, and support. Like all personal care assistants employed by Defendants, Cross is paid $12 an hour regardless of the number of hours worked. Compounding matters, Cross and other similarly situated employees are not compensated *at all* for time spent commuting between jobs. All told, Cross and her coworkers routinely work over 50 hours a week—but are never paid a cent of overtime.

2. Personal care assistants (often referred to as home health aides) play an increasingly crucial role helping people with disabilities, chronic illnesses, and cognitive

impairments by assisting in their daily living activities. According to the Bureau of Labor Statistics, nearly three million Americans perform this work—and the number grows each year.[1] Personal care assistants earn, on average, $23,130 a year.[2] As explained in greater detail below, these employees must be paid time-and-a-half overtime premiums. A 2015 rule promulgated by the Department of Labor definitively established that, under the Fair Labor Standards Act, home health aides employed by third-party employers (that is, employed by an agency and not directly by the family needing care) must be paid time-and-a-half overtime premiums for all hours worked over 40 each week. *See* 29 C.F.R. § 552.109. Minnesota law similarly provides no overtime exemption applicable to personal care assistants. Indeed, personal care assistants are precisely the sort of low-wage working Americans state and federal overtime laws were meant to protect.

3. Defendants stand in gross violation of these wage-and-hour obligations. Plaintiff brings this class and collective action seeking (1) declaratory and injunctive relief requiring Defendants to reclassify their workforce of personal care assistants as overtime eligible and (2) damages compensating Plaintiff and all similarly situated employees for the overtime compensation they were improperly denied.

## **PARTIES**

4. Plaintiff Vanelia Cross is an adult resident of St. Paul, Minnesota. Plaintiff is currently employed by Defendants as a personal care assistant. Pursuant to 29 U.S.C. § 216(b), Plaintiff consents in writing to be a party to this case. Her consent form is attached

---

[1] https://www.bls.gov/ooh/healthcare/home-health-aides-and-personal-care-aides.htm.
[2] *Id.*

2

as Exhibit A. As this case proceeds, it is likely other individuals will file consent forms and join as opt-in plaintiffs.

5. Defendant Rochester Home Care LLC is a business incorporated and headquartered in Minneapolis, Minnesota. Defendant Rochester Home Care is a home health care company, providing in-home nursing, rehabilitative, therapeutic, and assistive care services to its clients, who are children, adults, and seniors in need of such services.

6. Defendant Munya Bana is the owner and chief executive officer of Defendant Rochester Home Care. Defendant Bana resides in Minnesota. Defendant Bana is responsible for the decision to misclassify Defendants' workforce. Defendant Bana also maintains Defendant Rochester Home Care's records and controls the manner in which personal care assistants perform their jobs.

7. Defendants are or have been enterprises engaged in commerce or in the production of goods or services for commerce within the meaning of 29 U.S.C. § 203(s)(1), and, upon information and belief, Defendants have had an annual gross volume of sales made or business done of not less than $500,000 at all relevant times.

8. Plaintiff, and all those similarly situated, are or were individual employees engaged in commerce or in the production of goods or services for commerce as required by 29 U.S.C. § 207.

9. At all relevant times, Defendants are, and have been, "employers" of Plaintiff, those similarly situated, and the proposed Minnesota Rule 23 Class within the meaning of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 203(d), and the Minnesota Fair Labor Standards Act ("MFLSA"), Minn. Stat. §§ 177.23 and 177.24.

## JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question arising under § 207(a) of the FLSA.

11. This Court also has supplemental jurisdiction over Plaintiff's state law claim pursuant to 28 U.S.C. § 1367 because Plaintiff's state and federal claims are so related that they form part of the same case or controversy.

12. Venue is proper in the United States District Court, District of Minnesota, pursuant to 28 U.S.C. § 1391, because Defendants reside and conduct business in this District and because the unlawful practices described herein were committed in this District.

## FACTUAL ALLEGATIONS

13. Personal care assistants, like Plaintiff, work inside the homes of clients in need of care. They perform a wide range of service. For example, at the beginning of each service, Plaintiff greets her clients and socializes with them. She asks what the client wants to do that day. She spends time performing household chores, such as preparing meals, doing dishes, and cleaning the house. She also performs a variety of tasks to assist and care for the client. For example, Plaintiff helps her clients to get out of bed, stand up, sit, walk, and use the bathroom. She assists them with bathing. She reminds clients to take their medications at the scheduled times. Plaintiff frequently runs errands on behalf of her clients and helps her clients visit the doctor. Throughout the day, Plaintiff provides her clients with conversation, fellowship, and support. Plaintiff's experiences are typical of the work performed by other personal care assistants employed by Defendants.

14.     Plaintiff and other personal care assistants employed by Defendants work over 48 hours per week and do not receive overtime compensation.

15.     Plaintiff, for example, works inside the home of her first client from 8 to 11 a.m., seven days a week. She then drives to the home of her second client, and works there from 11:30 a.m. to 3:30 p.m., again seven days a week. In total, Plaintiff's schedule dictates that she work inside these two clients' homes seven hours a day, seven days week, for a total of 49 hours per week. Two of Plaintiff's paystubs are attached as Exhibit B. They show that Plaintiff was paid $12 an hour for 49 hours each week.

16.     Plaintiff's work schedule is typical for personal care assistants employed by Defendants. Defendants uniformly pay personal care assistants an hourly wage with no overtime regardless of the number of hours worked. Specifically, rather than paying employees one and a half times their regular rate of pay for all hours worked over forty in a workweek, which is required by the FLSA, 29 U.S.C. § 207, or over forty-eight in a workweek, which is required by the MFLSA, Minn. Stat. § 177.25, Defendants pay these employees straight time for all of their overtime hours worked.

17.     Plaintiff and other similarly situated employees also perform off-the-clock work for which they receive no compensation. Plaintiff and other similarly situated employees receive no compensation for time spent traveling between the homes of different clients. Although it is well settled that employees need not be compensated for driving to and from work at the beginning and end of the work day, "[t]ime spent by an employee in travel as part of their principal activity, such as travel from job site to job site during the workday, is work time and must be counted as hours worked." *See* Wage & Hour Div., U.S.

5

Dep't of Labor, Fact Sheet #22: Hours Worked Under the Fair Labor Standards Act (FLSA) (July 2008), https://www.dol.gov/whd/regs/compliance/whdfs22.htm. Defendants do not compensate employees for intraday travel time pursuant to a uniform company policy.

18. Defendants' continuing violation of state and federal overtime law is knowing and willful. Plaintiff has complained and pointed out to Defendants that the law requires them to pay overtime to personal care assistants. Defendants were also aware of state and federal overtime regulations but chose to misclassify their employees regardless.

## COLLECTIVE ACTION ALLEGATIONS

19. Plaintiff brings Count One on behalf of herself and all individuals similarly situated. The proposed FLSA Collective is defined as:

> All current or former personal care assistant workers employed by Defendants at any time beginning three years prior to filing this Complaint.

20. Defendants have willfully engaged in a pattern of violating the FLSA by failing to pay members of the proposed FLSA Collective one and a half times their regular rate of pay for all hours worked in excess of forty in a workweek.

21. Defendants' conduct constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255.

22. Defendants are liable under the FLSA for failing to properly compensate Plaintiff and others similarly situated, and, as such, notice should be sent to the proposed FLSA Collective. There are numerous similarly situated current and former employees of Defendants who have suffered from the common unlawful policies and practices and who would benefit from the issuance of a Court-supervised notice of the present lawsuit and the

opportunity to join the suit. Those similarly situated employees are known to Defendants and are readily identifiable through Defendants' payroll and timekeeping records.

## CLASS ACTION ALLEGATIONS

23. Plaintiff brings Count Two of this action individually and as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure. The proposed Minnesota Rule 23 Class is defined as:

> All current and former personal care assistant workers employed by Defendants at any time beginning three years prior to filing this Complaint.

24. The persons in the proposed Rule 23 Class are so numerous that joinder of all of the proposed Rule 23 Class members is impracticable. While the precise number of class members has not been determined at this time, upon information and belief, Defendant has employed at least one hundred personal care assistants in Minnesota during the applicable limitations period. Plaintiffs and the proposed Rule 23 Class have been similarly affected by Defendant's unlawful practices and policies.

25. There are questions of law and fact common to the proposed Rule 23 Class that predominate over any questions solely affecting individual members of the proposed Rule 23 Class, including but not limited to:

   a. whether Defendants violated Minn. Stat. § 177.25 (and accompanying regulations) by failing to pay employees an overtime premium of one-and-one-half times their regular hourly rate for hours worked in excess of forty-eight in a workweek;

   b. whether Defendants misclassified their personal care assistant employees by treating them as exempt from the overtime requirement of the MFLSA;

   c. whether time spent traveling between jobs is compensable under the MFLSA;

7

    d.      the proper measure of compensatory and damages, liquidated damages, and civil penalties; and

    e.      whether Defendants should be enjoined from such violations in the future.

26.      Plaintiff's claims are typical of those of the proposed Rule 23 Class. Plaintiff, like other members of the proposed Rule 23 Class, is subjected to Defendants' unlawful policies and practices, resulting in a violation of the MFLSA. Members of the proposed Rule 23 Class have sustained similar injuries as a result of Defendants' actions.

27.      Plaintiff will fairly and adequately protect the interests of the Rule 23 Class. She has retained counsel experienced in complex wage and hour class action litigation.

28.      This action is properly maintainable as a class action under Fed. R. Civ. P. 23(b)(1)(A) because prosecuting separate actions by individual class members would create a risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for Defendants.

29.      This action is properly maintainable as a class action under Fed. R. Civ. P. 23(b)(2) because Defendants have acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

30.      This action is properly maintainable as a class action under Fed. R. Civ. P. 23(b)(3) because questions of law or fact predominate over any questions affecting individual class members, and a class action is superior to other methods in order to ensure a fair and efficient adjudication of this controversy. In the context of wage and hour litigation, individual plaintiffs lack the financial resources to vigorously prosecute separate

lawsuits against large defendants. Class litigation is also superior because it will preclude the need for unduly duplicative litigation resulting in inconsistent judgments pertaining to Defendants' policies and practices. There do not appear to be any difficulties in managing this class action.

31. Plaintiff intends to send notice to the proposed Rule 23 Class to the extent required by Fed. R. Civ. P. 23(b)(3).

## CAUSES OF ACTION

### COUNT I—FLSA OVERTIME
**(FLSA, 29 U.S.C. § 207; On behalf of Plaintiff and the FLSA Collective)**

32. The FLSA, 29 U.S.C. § 207, requires covered employers to pay non-exempt employees one and a half times the regular rate of pay for all hours worked over forty per workweek.

33. At all relevant times, Plaintiff was an employee of Defendants within the meaning of 29 U.S.C. § 203(e)(1).

34. At all relevant times, Defendants were employers of Plaintiff within the meaning of 29 U.S.C. § 203(d).

35. The Fair Labor Standards Amendments of 1974, Pub. L. No. 93-259, 88 Stat. 55, expanded the FLSA's minimum wage and overtime protections to domestic service employees, 29 U.S.C. 206(f), 207(l), but simultaneously exempted "any employee employed in domestic service employment to provide companionship services for individuals who (because of age or infirmity) are unable to care for themselves (as such

terms are defined and delimited by regulations of the Secretary [of Labor]).” 29 U.S.C. § 213(a)(15).

36. The Department of Labor issued a regulation in 1975 providing that the exemptions for companionship services employees could be claimed by *third-party employers* who assigned home care workers to particular clients—not just exclusively by individuals or family members who hired a home care worker directly. 40 Fed. Reg. 7404, 7407 (Feb. 20, 1975) (29 C.F.R. § 552.109 (1975)).

37. At the time the regulation was promulgated, the "vast majority" of "private household workers were employed directly by a member of [the] household," rather than by a third-party employer. Emp't Standard Admin., U.S. Dep't of Labor, Minimum Wage and Maximum Hours Standards Under the Fair Labor Standards Act 28 (Jan. 19, 1973), http:// www.dol.gov/whd/homecare/1973-report.pdf. But over time, this began to change. By the 2000s, the provision of home care by third-party providers had developed into massive industry employing millions of Americans. *See* Application of the Fair Labor Standards Act to Domestic Service, 78 Fed. Reg. 60,455 (Oct. 1, 2013).

38. In 2007, the Supreme Court upheld the 1975 third-party regulation under the framework established in *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), concluding that the FLSA "expressly instructs the agency to work out the details of th[e] broad definitions" of domestic service employment and companionship services and "whether to include workers paid by third parties within the scope of the definitions is one of those details." *Long Island Care at Home, Ltd. v. Coke*, 551 U.S. 158, 164 (2007).

39. Following notice and comment, the Department of Labor in 2013 substantially revised the governing companionship services regulations. 78 Fed. Reg. 60,454, 60,455. Under the new regulation, "[t]hird party employers of employees engaged in companionship services . . . may not avail themselves of the minimum wage and overtime exemption provided by section 13(a)(15) of the [FLSA]." 29 C.F.R. § 552.109(a).

40. The revised regulation also narrowed the definition of "companionship services" itself. Under the revised regulation, the term "companionship services" means "the provision of fellowship and protection for an elderly person or person with an illness, injury, or disability who requires assistance in caring for himself or herself." *Id.* § 552.6(a). The "provision of fellowship" means "to engage the person in social, physical, and mental activities, such as conversation, reading, games, crafts, or accompanying the person on walks, on errands, to appointments, or to social events." *Id.* The "provision of protection" means "to be present with the person in his or her home or to accompany the person when outside of the home to monitor the person's safety and well-being." *Id.* The term "companionship services" also includes "the provision of care"—which includes activities such as "dressing, grooming, feeding, bathing, toileting, and transferring" and "meal preparation, driving, light housework, managing finances, assistance with the physical taking of medications, and arranging medical care"—"if the care is provided attendant to and in conjunction with the provision of fellowship and protection and if it does not exceed 20 percent of the total hours worked per person and per workweek." *Id.* § 552.6(b). The term "companionship services" "does not include domestic services performed primarily

for the benefit of other members of the household" or "the performance of medically related services provided for the person." *Id.* §§ 552.6(c)-(d).

41. Although the Department of Labor issued its final regulation in October 2013, the new third-party regulation did not take effect until January 1, 2015—giving businesses ample time to plan for compliance with the new rule.

42. A trade group representing the home care industry sued to invalidate the new rule, but the D.C. Circuit, citing *Long Island Care at Home*, held that the revised regulation represented a reasonable exercise of rulemaking authority expressly delegated by Congress. *See Home Care Ass'n of America v. Weil*, 799 F.3d 1084, 1090 (D.C. Cir. 2015). The U.S. Supreme Court denied certiorari in 2016, effectively ending the litigation.

43. Despite a clear legal mandate that third-party employers must pay overtime, employers in the home care industry continue to routinely flout the law. In the past three weeks alone, the Secretary of Labor has sued five third-party employers who continue to treat their home health aide employees as ineligible for overtime. *See Sec'y of Labor v. Access Home Care Inc.*, No. 1:18-cv-00581 (E.D. Va. filed May 16, 2018); *Sec'y of Labor v. High Quality Care Nursing Agency, Inc.*, No. 8:18-cv-01377 (D. Md. filed May 11, 2018); *Sec'y of Labor v. Healing Springs Med-Car, LLC*, 1:18-cv-00325 (S.D. Ohio filed May 10, 2018); *Sec'y of Labor v. At Home Personal Care Servs. LLC*, 1:18-cv-00549 (E.D. Va. filed May 8, 2018); *Sec'y of Labor v. Care at Home*, 3:18-cv-00711 (D. Conn. filed Apr. 24, 2018). And many more actions, like this one, have been filed by employees themselves. *E.g.*, *Allen v. All Temporaries, Inc.*, 0:16-cv-04409 (D. Minn. filed Mar. 31, 2017); *Mayfield-Dillard v. Direct Home Health Care, Inc.*, 0:16-cv-03489 (D. Minn. filed

Oct. 14, 2016); *Vongkhamchanh v. All Temporaries Midwest, Inc.*, 0:17-cv-00976 (D. Minn. filed Mar. 30, 2017).

44. At all relevant times, Defendants misclassified Plaintiff and their personal care assistant employees as exempt from the FLSA. Defendants are "[t]hird party employers" who are not eligible to claim the companionship services exemption under section 13(a)(15) of the FLSA. *See* 29 C.F.R. § 552.109(a). Further, Plaintiff and her fellow personal care assistants do not engage in "companionship services" within the meaning of the rule. Rather, they spend at least 21 percent of their time providing care: "dressing, grooming, feeding, bathing, toileting, and transferring" and engaging in "meal preparation, driving, light housework, managing finances, assistance with the physical taking of medications, and arranging medical care." *Id.* § 552.6(b).

45. Defendants have failed to pay Plaintiff and other similarly situated employees for off-the-clock work. Defendants failed to pay employees for work time spent driving between jobs, denying Plaintiff and similarly situated employees further overtime compensation owed to them under the FLSA.

46. Defendants knew, or showed reckless disregard for the fact, that they failed to pay their employees proper overtime compensation in violation of the FLSA.

47. Plaintiff and all similarly situated employees are entitled to unpaid overtime, liquidated damages, and attorney's fees and costs under the FLSA.

## COUNT II—MFLSA OVERTIME
**(MFLSA, Minn. Stat. § 177.21, *et seq.*; On behalf of Plaintiff and the Rule 23 Class)**

48. Plaintiff and the proposed Minnesota Rule 23 Class are or were employees of Defendants within the meaning of the MFLSA, Minn. Stat. §§ 177.23 and 177.24.

49. Defendants were or are the employers of Plaintiff and the proposed Minnesota Rule 23 Class within the meaning of the MFLSA, Minn. Stat. §§ 177.23 and 177.24.

50. The MFLSA requires employers to pay their employees for hours worked in excess of forty-eight in an individual work week at a rate not less than one and one-half times their regular hourly rate of pay. Minn. Stat. § 177.25, subd. 1. When Defendants paid Plaintiff and the Minnesota Rule 23 Class straight time, rather the required one and one-half times their regular hourly rate for hours worked over forty-eight in a workweek, they violated the MFLSA.

51. Defendants have failed to pay Plaintiff and other similarly situated employees for off-the-clock work. Defendants failed to pay employees for work time spent driving between jobs, denying Plaintiff and similarly situated employees further overtime compensation owed to them under the MN FLSA.

52. Defendants knew, or showed reckless disregard for the fact, that they failed to pay their employees proper overtime compensation in willful violation of the MFLSA. Minn. Stat. § 541.07(5).

53. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and the Minnesota Rule 23 Class have suffered damages in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the proposed FLSA Collective, prays for relief as follows:

A. Declaratory and injunctive relief requiring Defendants to reclassify their workforce of personal care assistants as eligible to receive overtime premiums;

B. Permitting this case to proceed as a collective action under § 216(b) of the FLSA and ordering notice to the putative plaintiffs at the earliest opportunity to ensure their claims are not lost to the FLSA statute of limitations;

C. Judgment that Plaintiff and those similarly situated are entitled to the overtime protections under the FLSA;

D. Judgment against Defendants for violation of the overtime provisions of the FLSA;

E. Judgment that Defendants' violations of the FLSA were willful.

F. An award to Plaintiff and those similarly situated in the amount of unpaid overtime wages and liquidated damages;

G. An award of any pre- and post-judgment interest;

H. An award of reasonable attorneys' fees and costs;

I. Leave to add additional plaintiffs and/or state law claims by motion, the filing of written consent forms, or any other method approved by the Court; and

J. For all such further relief as the Court deems equitable and just.

WHEREFORE, Plaintiff as a class representative, individually and on behalf of the proposed Minnesota Rule 23 Class, prays for relief as follows:

A. Declaratory and injunctive relief requiring Defendants to reclassify their workforce of personal care assistants as eligible to receive overtime premiums;

B. Certification of this action as a class action pursuant to Fed. R. Civ. P. 23 on behalf of the proposed Minnesota Rule 23 Class, and the appointment of Plaintiff as class representative and her counsel as class counsel;

C. Judgment against Defendants for an amount equal to Plaintiff's and the proposed Minnesota Rule 23 Class' unpaid overtime wages;

D. Judgment that Defendant's conduct as described herein be determined and adjudicated to be in violation of the MFLSA;

E. A finding that Defendants' violations are willful.

F. An amount equal to Plaintiff's and the proposed Minnesota Rule 23 Class' damages as liquidated damages;

G. An award of any pre- and post-judgment interest;

H. An award of reasonable attorneys' fees and costs; and

I. For all such further relief as the Court deems equitable and just.


Dated: May 19, 2018                     APOLLO LAW, LLC

                                        /s/Adam W. Hansen_____
                                        Adam W. Hansen, MN Bar No. 0391704
                                        400 South 4th Street
                                        Suite 401M - 250
                                        Minneapolis, MN 55415
                                        Phone: (612) 927-2969
                                        Fax:   (419) 793-1804
                                        adam@apollo-law.com

ATTORNEY FOR PLAINTIFF, THE
PUTATIVE FLSA COLLECTIVE, AND THE
MINNESOTA RULE 23 CLASS